# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD W. HOLCOMBE, JR., : | |
| Individually and as Administrator : | |
|     Plaintiff : | CIVIL ACTION |
| : | |
|             v. : | NO. 08-570 |
| : | |
| QUEST DIAGNOSTICS, INC., et al. : | |
|     Defendants/Third-Party Plaintiffs : | |
| : | |
|             v. : | |
| : | |
| ABINGTON MEMORIAL HOSPITAL, et al., : | |
|     Third-Party Defendants : | |

**December_8__, 2009**                                                                  **Anita B. Brody, J.**

## MEMORANDUM

This memorandum addresses a motion to disqualify the plaintiff's counsel. In the underlying action, Plaintiff Richard Holcombe ("Holcombe") brought this medical professional liability action (the "Holcombe matter") against Defendants Quest Diagnostics Inc. and Quest Diagnostics Clinical Laboratories, Inc. ("Quest Diagnostics"). Holcombe claims that Quest Diagnostics negligently performed pathology testing on a specimen removed from Mary Holcombe, Richard Holcombe's wife, delaying her diagnosis of malignant melanoma and ultimately resulting in her death. Holcombe is represented by the law firm Feldman & Pinto.

Quest Diagnostics brought a Third-Party Complaint against Third-Party Defendants Abington Memorial Hospital ("Abington") and Dr. R. T. Goldhahn, Jr. ("Dr. Goldhahn") for contribution and indemnification alleging that Abington and Dr. Goldhahn conducted the

1

pathology testing. Abington and Dr. Goldhahn are represented by the firm of Weber Gallagher Simpson Stapleton Fires & Newby, LLP ("Weber Gallagher"). During the pendency of this action, Patricia L. Rizzo, Esq. ("Rizzo") moved from Weber Gallagher, where she was originally employed, to Feldman & Pinto. Abington and Dr. Goldhahn seek to disqualify Feldman & Pinto as counsel for Holcombe. On November 5, 2009, I conducted an evidentiary hearing and found that all of the testimony was credible.

## I. BACKGROUND[1]

At the outset of this action, Rizzo was employed at Weber Gallagher. Rizzo began working on the Holcombe matter in March 2009. As part of her responsibilities for the Holcombe matter, Rizzo advised both Abington and Dr. Goldhahn. She engaged in client communication, discussed the merits of the case with potential experts, and acquired privileged and confidential information about her clients and the defense strategy. Rizzo was the Weber Gallagher attorney who spent the most time on the Holcombe matter. From July through October 2009, Rizzo billed 62.3 hours on this case, while other attorneys at Weber Gallagher billed a combined total of 14.9 hours.

In August 2009, Rizzo accepted an offer of employment with Feldman & Pinto. She continued working on the Holcombe matter, however, until September 18, 2009, when she resigned from Weber Gallagher. Although Rizzo told her secretary about her plans to work at Feldman & Pinto, she never informed the management committee or any of her partner supervisors at Weber Gallagher that she accepted a position at Feldman & Pinto. Similarly,

---

[1] All facts in this Memorandum are my Findings of Fact after considering testimony at the November 5, 2009 hearing and documentary evidence submitted by the parties.

while Rizzo sent both Abington and Dr. Goldhahn letters informing them that she was leaving Weber Gallagher, she failed to notify either of those clients that she would be working for Plaintiff's counsel, Feldman & Pinto.

On September 29, 2009, Rizzo started at Feldman & Pinto. One day earlier, on September 28, 2009, Feldman & Pinto held an office-wide meeting that all employees attended. At this meeting, Feldman & Pinto outlined the steps it would take to prevent a conflict of interest and screen Rizzo from the Holcombe matter. Employees were instructed that it was improper to discuss any aspect of the Holcombe matter with Rizzo. Additionally, Feldman & Pinto implemented the following safeguards:

- Electronic files related to the Holcombe matter were password protected; the password is unavailable to Rizzo.
- Paper files related to the Holcombe matter were removed from the general file room and placed in the office of Kathy Megara, a nurse paralegal employed by Feldman & Pinto.

Rizzo confirmed in her testimony at the evidentiary hearing that she has never discussed her involvement in the Holcombe matter with anyone at Feldman & Pinto, except as an adversary while she was employed at Weber Gallagher.

Weber Gallagher was unaware that Rizzo accepted a position at Feldman & Pinto until September 30, 2009. Thereafter, Abington and Dr. Goldhahn, represented by Weber Gallagher, brought this Motion to Disqualify Feldman & Pinto. Abington and Dr. Goldhahn contend that, given the facts of this case, Feldman & Pinto's screening regimen fails to sufficiently protect their interests.

On November 9, 2009, I ordered Abington and Dr. Goldhahn to submit a proposed screening protocol for Feldman & Pinto to adopt in the event that I deny their Motion to Disqualify. Abington and Dr. Goldhahn submitted such a proposal, while continuing to argue that Feldman & Pinto should be disqualified because a screening protocol is insufficient protection. In short, the proposal contemplates:

- The appointment of a Special Master to meet with Feldman & Pinto attorneys and staff and to review their compliance with the protocol on a biweekly basis.
- That the support staff Rizzo works with abstain from working on the Holcombe matter.
- That Feldman & Pinto report any breaches of the screening protocol to the Special Master or the Court.
- That none of the attorneys or staff at Feldman & Pinto discuss the Holcombe matter with Rizzo, and that Rizzo has no access to any files or witnesses related to the Holcombe matter.

On November 20, 2009, Feldman & Pinto submitted a counter-proposal. Other than objecting to biweekly interviews by a Special Master, Feldman & Pinto agreed to Abington and Dr. Goldhahn's restrictions. Further, the counter-proposal added an additional layer of protection: that all paper documents are stored in the West Chester, Pennsylvania office of Christopher Hayes, Esq. ("Hayes"), an associate at Feldman & Pinto who has never met Rizzo. Hayes's computer system is entirely independent from the computer system in the Philadelphia office, where Rizzo works. Hayes would be responsible for emailing documents directly to Laura A. Feldman, Esq. ("Feldman") and J. Bradley McDermott, Esq. ("McDermott"), the two

Feldman & Pinto attorneys working on the Holcombe matter. Feldman and McDermott will save the electronic files solely on a USB portable device to which only they would have access.

**II. STANDARD FOR A MOTION TO DISQUALIFY**

A "district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980). "Although disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification never is automatic." Id. In deciding whether to disqualify an attorney, a court "should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." Id.

While the burden is on the party seeking disqualification to show that the representation is impermissible, the burden of proving compliance with the screening exceptions in Pa. Rules of Prof'l Conduct 1.10(b), discussed in more detail *infra*, is on the law firm whose disqualification is sought. James v. Teleflex, Inc., No. 97-cv-1206, 1999 WL 98559, at *3 (E.D. Pa. Feb. 24, 1999).

**III. DISCUSSION**

Attorneys appearing before this court must comply with the Pennsylvania Rules of Professional Conduct. See E.D. Pa. Local R. Civ. P. 83.6, R. IV(B). Rule 1.9 provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

Pa. Rules of Prof'l Conduct 1.9.  It is undisputed that Rizzo worked on the Holcombe matter while employed at Weber Gallagher.  Likewise, Holcombe's interests are materially adverse to Rizzo's former clients, Abington and Dr. Goldhahn.  Proof of Holcombe's claims against Quest Diagnostics directly touch upon and concern the claims that Quest Diagnostics has against Abington and Dr. Goldhahn.  Information that would tend to establish Abington or Dr. Goldhahn's negligence would be valuable to Holcombe as he tried to prove his case against Quest Diagnostics.  Thus, Rule 1.9 prohibits Rizzo from representing Holcombe in the Holcombe matter.

Rule 1.10 imputes an individual lawyer's conflict to other attorneys in her firm.  It provides:

> (b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter unless:
>
> > (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>
> > (2) written notice is promptly given to the appropriate client to enable it to ascertain compliance with the provisions of this rule.

Pa. Rules of Prof'l Conduct 1.10.  It is undisputed that Rizzo failed to give written notice to the appropriate clients.  At least one court has determined that this failure alone is sufficient for disqualification.  See Royal Bank of Pa. v. Walnut Square Partners, No. 7356, 2006 Phila. Ct. Com. Pl. LEXIS 147 (Philadelphia C.P. 2006) ("The lack of disclosure raises a spector of impropriety that no *ex post facto* Chinese Wall can contain.").  Nonetheless, because

6

disqualification is never automatic and the disciplinary rules must be weighed against countervailing policy goals, I also consider whether an effective screening protocol would allow Holcombe to maintain the counsel of his choice while adequately protecting Abington and Dr. Goldhahn's interests.

Courts examining whether an ethics screen will be effective have considered:

1. The substantiality of the relationship between the attorney and the former client,
2. The time lapse between the matters in dispute,
3. The size of the firm and the number of disqualified attorneys,
4. The nature of the disqualified attorney's involvement, and
5. The timing of the wall.

Dworkin v. General Motors Corp., 906 F. Supp. 273, 279-80 (E.D. Pa. 1995) (citing Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz, 602 A.2d 1277, 1289 (1992) (Nix, J., dissenting).

There is no question that Rizzo had a substantial relationship with Abington and Dr. Goldhahn. She communicated with each of these clients, had extensive contact with the pertinent experts, and participated in developing the defense strategy. She was an active participant in the Holcombe matter for more than six months.

The time lapse between Rizzo's work on the Holcombe matter at Weber Gallagher and her employment at Feldman & Pinto is negligible. Holcombe resigned from Weber Gallagher on September 18, 2009; she began work at Feldman & Pinto on September 29, 2009. Further, Feldman & Pinto is a small firm with only five attorneys. A firm's small size is "a detriment rather than an asset in implementing an effective screen" because there is more contact between the attorneys. Dworkin, 906 F. Supp. at 280.

Feldman & Pinto has taken active steps, however, to protect Abington and Dr. Goldhahn's confidential information. Before Rizzo began employment at the firm, it imposed an

7

ethics screen that prohibited discussion of the Holcombe matter.  Courts analyzing the features of such a screen have considered whether the screen provides for:

1. The prohibition of discussion of sensitive matters,
2. Restricted circulation of sensitive documents,
3. Restricted access to files, and
4. Strong firm policy against breach, including sanctions, physical and/or geographical separation.

Id.  Both Feldman & Pinto's original policy and the terms of its November 20, 2009 counter-proposal prohibit the discussion of the Holcombe matter, restrict the circulation of sensitive documents, and restrict access to files.  I found both Rizzo and Feldman entirely credible when they testified at the November 5, 2009 evidentiary hearing that they never had any inappropriate conversations about the Holcombe matter.  I also find that Rizzo's compensation is entirely independent from Feldman & Pinto's success in the Holcombe matter.

Feldman & Pinto's original ethics screen was inadequate.  The original screen, which was never reduced to writing, lacked a strong policy against breach that includes sanctions.  Feldman & Pinto's November 20, 2009 counter-proposal, however, resolves many of these concerns.  The counter-proposal provides that all paper documents will be held in the office of another Feldman & Pinto attorney who practices in a different city and prevents Feldman & Pinto staff from working on the Holcombe matter.  These protections evidence a strong firm policy against breach that includes geographical separation.

As disqualification is a severe penalty, it is inappropriate where an ethics screen can adequately protect the affected party's interests.  See Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721 (7th Cir. 1982) ("disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose

except when absolutely necessary"). I must balance (1) Abington and Dr. Goldhahn's interest in attorney loyalty, (2) Holcombe's interest in retaining his chosen counsel, (3) the risk of prejudice to Holcombe, and (4) the court's interest in protecting the integrity of the proceedings and maintaining public confidence in the judicial system. Int'l Longshoremen's Ass'n, Local Union 1332 v. Int'l Longshoremen's Ass'n, 909 F. Supp. 287, 293 (E.D. Pa. 1995) (citing In re Corn Derivatives Antitrust Litig., 748 F.2d 157, 162 (3d Cir. 1984)). I must also consider the countervailing policy goal of "enabling attorneys to practice without excessive restrictions." Miller, 624 F.2d at 1201.

Weighing these factors, I find that it is possible to impose an ethics screen that adequately protects Abington and Dr. Goldhahn's interests and the integrity of the proceedings. Accordingly, if Feldman & Pinto wishes to continue as counsel for Holcombe in this litigation, it must adopt a screening protocol that includes the following provisions:

- None of the attorneys or staff at Feldman & Pinto shall discuss the Holcombe matter with Rizzo. None of the attorneys or staff of Feldman & Pinto shall in any manner have discussions of the Holcombe matter in the presence of Rizzo. Rizzo shall not be permitted to have any access to documents, materials, or file contents either electronically, on paper, or by way of computer that are related to the Holcombe matter. Rizzo shall have no access to Holcombe or any witnesses, potential witnesses, or consultants in the Holcombe matter.

- A Special Master shall be appointed by the Court. The duties of the Special Master are described in a separate order. Feldman & Pinto shall fully cooperate with the Special Master and shall bear all the costs of periodic monitoring.[2]

- Feldman & Pinto shall conduct a firm-wide meeting where it distributes a copy of this Memorandum and explains the pertinent provisions.

- The Holcombe file, both paper and computer, shall be maintained in the West Chester, Pennsylvania office of Christopher Hayes. Hayes' computer system shall remain entirely independent from the computers in the Philadelphia office of Feldman & Pinto.

- All future written communications can be mailed to the West Chester office. Hayes shall scan the documents to his computer and maintain the paper file.

- Hayes shall email a scanned PDF document to either Laura Feldman, Esq. or J. Bradley McDermott, Esq. as they are received. Upon opening the email, Feldman or McDermott shall download the document to a USB portable drive that will be maintained under lock and key and the email will be immediately deleted. There will be only two keys maintained by Feldman and McDermott.

- No staff member of the Feldman firm other than Feldman or McDermott shall have access to the USB portable device, nor shall any staff member work on the

---

[2] The logic behind the written notice requirement is to "enable [the client] to ascertain compliance with the provisions of this rule." Pa. Rules of Prof'l Conduct 1.10(b)(2). Regular reports from the Special Master will allow Abington and Dr. Goldhahn to ensure the continued effectiveness of a screening protocol.

> file in any respect other than to answer telephone calls from counsel and relate any messages from counsel.
> 
> - Any documents drafted related to the file will be typed, edited, and copied solely by Feldman, McDermott, or Hayes.
> 
> - No paper copies of documents will be maintained except in electronic format on the aforementioned portable USB drive. A second backup electronic copy of the data will be maintained in the case of corruption of data to the original. The backup copy will also be on a portable USB drive under the same lock and key. There will be no data on Feldman & Pinto computers other than at the office of Christopher Hayes in West Chester.
> 
> - No staff members will work in any capacity on the Holcombe matter.
> 
> - Any further depositions shall be conducted outside the Feldman & Pinto firm.
> 
> - Any breaches of these provisions shall be immediately reported by Feldman & Pinto to the Special Master.

I am confident that a screening protocol with these provisions will protect Abington and Dr. Goldhahn's interests.

## IV. Conclusion

For the reasons stated above, the Motion to Disqualify is denied. In order to continue representing Holcombe, however, Feldman & Pinto must adopt the screening protocol outlined and cooperate with the Special Master to ensure compliance. An appropriate Order follows.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:	Copies **MAILED** on _____ to: